UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN B. BEGEY<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br><br>　　　　Defendant. | No. CV 10-3332 AGR<br><br>**MEMORANDUM OPINION AND ORDER** |

　　　　Plaintiff Steven B. Begey filed a complaint on May 6, 2010. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on May 21 and June 18, 2010. (Dkt. Nos. 8, 9.) On February 15, 2011, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The Court has taken the matter under submission without oral argument. Having reviewed the entire file, the Court affirms the decision of the Commissioner.

///

///

///

///

///

///

# I.

## **PROCEDURAL BACKGROUND**

On June 23, 2005, Begey filed an application for disability insurance benefits. Administrative Record ("AR") 14.[1] He alleged a disability onset date of March 3, 2003. *Id.* The application was denied initially and on reconsideration. *Id.* Begey requested a hearing before an Administrative Law Judge ("ALJ"). AR 36. On September 13, 2007, an ALJ conducted a hearing at which Begey testified. AR 1329-57. On October 18, 2007, the ALJ issued a decision denying benefits. AR 14-22. On March 3, 2010, the Appeals Council denied the request for review. AR 3-6. This action followed.

# II.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, "substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523.

---

[1] Begey previously filed an application for disability insurance benefits on June 27, 2001. AR 15. The application was denied and Begey did not request a hearing before an Administrative Law Judge. *Id.*

# III.

# DISCUSSION

### A.  Disability

A person qualifies as disabled and is eligible for benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B.  The ALJ's Findings

The ALJ found that Begey met the insured status requirements through March 31, 2007.  AR 16.  Begey had the following severe impairments:  degenerative joint and disc disease of the cervical spine with moderate spinal stenosis, degenerative joint disease, left shoulder, status post left shoulder arthroscopic decompression in 2002, coronary artery disease, status post stent placement times two with one stent replacement, noninsulin dependent diabetes mellitus, controlled hypertension, hyperlipidemia, tobacco abuse, moderate obesity with chronic obstructive sleep apnea, old healed left patella fracture, and adjustment disorder, mild, with mixed emotional features.  AR 17.

The ALJ found Begey had the residual functional capacity ("RFC") to perform light work, except stand or walk occasionally (two out of eight hours), sit frequently (six out of eight hours) with customary breaks, and climb, balance, stoop, kneel, crouch, or crawl occasionally.  AR 19.  Begey could not perform any past relevant work, but he could perform jobs that exist in significant numbers in the national economy.  AR 22.

### C.  Treating Physician

Begey contends the ALJ failed to provide specific and legitimate reasons for discounting the opinion of treating cardiologist Dr. Campo.  Begey does not contend Dr.

///

///

Campo's opinion is entitled to controlling weight,[2] but argues his opinion "could be entitled to greater weight as compared to the opinions of the non-treating physicians for a finding of disability." JS 10.

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue,* 495 F.3d 625, 631 (9th Cir. 2007). When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* at 632 (citations and quotation marks omitted). An ALJ may reject a treating physician's opinion based on an examining physician's opinion with independent clinical findings. *Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir. 1995). A nonexamining physician's opinion may constitute substantial evidence when it is supported by other evidence in the record and is consistent with it. *Id.*

Dr. Campo filled out a Cardiac Residual Functional Capacity Questionnaire ("Questionnaire") dated August 13, 2007. AR 805-09. He stated he treated Begey every two months for cardiac evaluation. AR 805. He indicated Begey could sit about two hours per workday, stand or walk less than two hours per workday, lift and carry ten pounds occasionally, never carry twenty pounds or more, and must avoid even moderate exposure to extreme cold and heat, wetness, humidity, fumes, odors, dusts, gases, poor ventilation, and hazards such as machinery and heights. AR 807-08. Begey should elevate his legs with prolonged sitting. AR 808. Although Begey's cardiac symptoms did not cause depression or chronic anxiety, Begey should avoid all but low stress situations. AR 806. He opined Begey's cardiac symptoms would often interfere

---

[2] A treating physician's opinion on the nature and severity of a claimant's impairment(s) is given controlling weight if the ALJ finds that the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2).

with his attention and concentration. *Id.* He estimated Begey would be absent from work more than three times a month. AR 808.

The ALJ provided specific and legitimate reasons for declining to give Dr. Campo's Questionnaire "any significant weight." AR 21. He determined Dr. Campo's opinion was not supported by Begey's treatment records or the record as a whole. AR 21. The ALJ acknowledged Begey's coronary disease and stent placements in 2003. AR 930-32, 1031-33. Begey points to chest pain he later suffered in April 2006,[3] and results of the angiogram which showed 40%-50% narrowing at some points. AR 37-39. However, the ALJ correctly noted that the treating records do not support Dr. Campo's opinion dated August 2007. In July 2006, treating physician Dr. Kim notes Begey complained of anxiety and chest pain, which was relieved with narcotic medications rather than nitroglycerin. Dr. Kim concluded the chest pain was noncardiac in origin. AR 321. On April 4, 2007, Dr. Kim's records indicate Begey "had been asymptomatic for any severe chest pains since" July 2006 and "occasionally get[s] chest discomfort but usually is relieved promptly with nitroglycerin." AR 259. Dr. Kim again concluded Begey "has atypical chest pain, probably a combination of musculoskeletal pain and anxiety." AR 260; *see also* AR 321, 335 (August 2006). In the medical records subsequently submitted to and considered by the Appeals Council for a period after the date last insured, coronary angiography in February 2008 showed a 45% stenosis in the mid left anterior descending artery, a 50% stenosis in the distal circumflex system at the site of a stent and a 40% proximal narrowing of the first diagonal. AR 1226. The treating physician concluded Begey "does not have hemodynamically significant coronary artery disease."[4] AR 1227. In July 2008, Begey was advised to increase his activities and

---

[3] It appears Begey had resumed smoking in the prior months. AR 333.

[4] The treatment notes state: "The angiographic findings were once again explained to Mr. Begey. He does not have hemodynamically significant coronary artery disease, and therefore most of his chest pains are not likely to be 'angina.' He should continue his current medications. The importance of losing weight and quitting smoking

exercise. AR 1208. As the ALJ noted, the record contained substantial evidence showing mild to normal results of chest x-rays, angiograms, electrocardiograms, stress tests and echocardiograms throughout the relevant period. AR 17-18, 163, 176-78, 203, 262-63, 321, 497-99, 511-12, 515, 718, 833-35, 918-19, 920-21. Ischemia and acute coronary syndrome were repeatedly ruled out. AR 176-78, 263, 321, 497-99, 511-12, 833-35, 918-21. The ALJ noted Dr. Campo's physical examinations of Begey in August 2006 and January 2007 reflected normal results, except for 1+ ankle edema. AR 18, 174-75.

Substantial evidence supports the ALJ's conclusion that the treatment records, including extensive testing, did not support the limitations set forth by Dr. Campo in August 2007. AR 17-18, 21. To the extent there is a conflict in the treating records, it is for the ALJ to resolve the conflicts. The ALJ did not err.

### D. Treating Psychiatrist

Begey argues that the ALJ failed to articulate specific and legitimate reasons for rejecting the opinion of the treating psychiatrist, Dr. LaHaye.[5]

As discussed above, the opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn,* 495 F.3d at 631. When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough

---

has been emphasized to him; he may benefit from referral to a stop smoking program." AR 1227.

[5] The Commissioner argues Dr. LaHaye was not a treating psychiatrist due to her "short-term relationship" with Begey. The Court disagrees. *See Benton v. Barnhart,* 331 F.3d 1030, 1038-39 (9th Cir. 2003) (physician who examined patient once may complete Mental RFC Assessment on behalf of treatment team); *Ghokassian v. Shalala,* 41 F.3d 1300, 1303 (9th Cir. 1994) (physician who saw claimant twice within 14-month period, prescribed medication and referred to him as "my patient" was treating physician); 20 C.F.R. § 404.1502.

summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* at 632 (citations and quotation marks omitted).

In a letter dated February 19, 2007, Dr. LaHaye stated that Begey had been her patient since December 28, 2006 and he suffers from major depression. AR 185. She further stated that he has responded well to medication, but he remains "realistically concerned and upset about the serious medical issues in his life." *Id.* She stated Begey could not return to work due to decreased attention, focus, concentration and mood. *Id.*

The ALJ rejected Dr. LaHaye's February 19, 2007 opinion. AR 18. He found it inconsistent with the findings of the consultative examiner and the State agency psychiatrists; unsupported by the regulation's B-criteria as it did not indicate a serious restriction of activities of daily life or social functioning;[6] and contradicted by formal testing, which indicated no serious limitation of concentration or memory. *Id.* He also cited Begey's limited treatment history with Dr. LaHaye. *Id.* The ALJ found Begey had no severe mental impairment that would preclude all work. *Id.*

The ALJ may properly consider the consistency of the opinion with the record as a whole. *Orn*, 495 F.3d at 631; 20 C.F.R. § 404.1527(d)(4). The ALJ found Dr. LaHaye's opinion inconsistent with the findings of the consultative examiner, Dr. Abejuela. AR 18, 894-900. An examining physician's opinion constitutes substantial evidence when, as here, it is based on independent clinical findings. *Orn*, 495 F.3d at 631. Dr. Abejuela stated that "[t]he objective findings in the mental status examination revealed some mild depression and mild anxiety consistent with an adjustment disorder with mixed emotions." AR 899. Dr. Abejuela found no mental restriction in Begey's daily activities and mild mental difficulties in social functioning. *Id.* His concentration, persistence and pace were mildly impaired, and there were no episodes of deterioration in work-like situations. *Id.* Begey's ability to understand, carry out, and remember simple instructions is not impaired, and his response to co-workers and supervisors, and the

---

[6] The "B-criteria" is referenced in the Listings for mental impairments. *See, e.g.,* 20 C.F.R., Part 404, Subpart P, Appendix 1 § 12.04.

public is mildly impaired. *Id.* His psychiatric prognosis is fair to good. AR 900. The ALJ also relied upon the opinions of the state agency physicians. AR 18, 861-75. Their opinions constitute substantial evidence when, as here, the opinions are consistent with other evidence in the record. *Andrews*, 53 F.3d at 1041.

The ALJ also found Dr. LaHaye's opinion inconsistent with Begey's activities of daily life and formal testing, which indicated no serious limitation of concentration or memory. AR 18. Begey testified he smoked a half to three-quarters of a pack of cigarettes per day, drove up to twenty miles at a time, had a valid California driver's license without restriction, occasionally watched the children in his wife's child care business, and drove his children to and from school. AR 20, 1338-41. In addition, Dr. Abejuela conducted a mental status examination and found that Begey had only mild impairments in concentration and memory. AR 899.

To the extent the ALJ erred in not addressing Dr. LaHaye's check-the-box March 28, 2007 questionnaire that noted marked limitations in performing activities of daily living and extreme limitations in maintaining concentration, persistence or pace, any error would be harmless. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (an error is harmless if it is "inconsequential to the ultimate nondisability determination"); *see also McLeod v. Astrue*, 640 F.3d 881, 887-88 (9th Cir. 2011) (party challenging agency determination has burden to show prejudice resulted from alleged error). The March 28, 2007 questionnaire suffers from the same defects as Dr. LaHaye's February 19, 2007 opinion, except that it listed the B-criteria factors.[7] Moreover, Dr. LaHaye opined that Begey's mental impairment had not lasted or would

---

[7] Begey argues that Dr. LaHaye's mental status findings in her initial evaluation on December 28, 2006 constitute clinical findings. JS 13; AR 191. However, Dr. LaHaye's subsequent treatment records indicate that a few days later on January 4, 2007, Begey was less anxious and less isolative, with no problems from the medications. AR 188. On January 18, 2007, he was less depressed and his family told him he was back to normal. AR 187. Even at the initial evaluation, Begey was well-groomed and calm. His thought processes and judgment were intact. AR 191. Her treatment records do not support the extreme limitations in the March 28, 2007 questionnaire.

not be expected to last at least twelve months. AR 816. To satisfy the duration requirement at step two of the sequential analysis, the severe impairment must have lasted or be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1520(a)(4)(ii); *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

The length of the treating relationship and frequency of examination are factors an ALJ may consider. *Orn*, 495 F.3d at 631; *see also* 20 C.F.R. § 404.1527(d)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source."). Dr. LaHaye started treating Begey on December 28, 2006 and wrote the letter on February 19, 2007.[8] AR 185. She saw Begey four times in that period. AR 186-91.

The ALJ provided specific and legitimate reasons for rejecting Dr. LaHaye's opinion. The ALJ did not err.

## IV.
## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: August 12, 2011

ALICIA G. ROSENBERG
United States Magistrate Judge

---

[8] The ALJ incorrectly states that Dr. LaHaye began seeing Begey on January 4, 2007. AR 18. The difference in time is less than a week and the error is harmless. *See Stout,* 454 F.3d at 1055.

9